750 So.2d 262 (1999)
STATE of Louisiana
v.
Mildred BROWN.
No. 99-KA-598.
Court of Appeal of Louisiana, Fifth Circuit.
December 15, 1999.
*264 Harry J. Morel, Jr., District Attorney, Kim McElwee, Asst. District Attorney, Hahnville, Louisiana, Counsel for plaintiff-appellee.
Wendy J. Williams, Luling, Louisiana, Counsel for defendant-appellant.
Court composed of Judges EDWARD A. DUFRESNE, Jr. and THOMAS F. DALEY, and CLARENCE E. McMANUS, Judge Pro Tem.
CLARENCE E. McMANUS, Judge Pro Tem.
The instant matter is an appeal from the denial of a Motion to Suppress evidence found in appellant's home. Following the hearing, appellant herein, Mildred Brown, plead guilty to one count of possession of cocaine, reserving her rights to appeal the denial of her motion: this suppression issue comprises appellant's only allegation of error. Brown alleges that since the warrant allowing a search for narcotics did not explicitly authorize a nighttime search, execution of the warrant at 10:30 p.m. was unconstitutional. Because the signing judge did have knowledge of the information omitted from the warrant, and in light of what was omitted, we find that this error barely invokes constitutional scrutiny. And in consideration of the executing officer's good faith, under the appropriate standard of review, we affirm the trial judge's ruling denying the Motion to Suppress.
The facts of the crime charged, the execution of the warrant, and the proceedings leading to Brown's guilty plea are as follows.
On September 8, 1998, the St. Charles Parish District Attorney filed a bill of information charging the defendant, Mildred Brown, and a co-defendant, Donald Wycoff, with one count of possession with the intent to distribute cocaine and with one count of possession with the intent to distribute marijuana, violations of LSA-R.S. 40:967(A)(1), respectively. Defendant pled not guilty to these charges at her arraignment. The defendant filed a motion to suppress the evidence, which was heard and denied on December 18, 1998.
On March 9, 1999, the State amended the bill of information to charge the defendant with possession of cocaine, and dismissed the marijuana charge. The same day, the defendant withdrew her not guilty plea, and pled guilty to possession of cocaine, a violation of LSA-R.S. 40:967(C), reserving her right under State v. Crosby[1] to appeal the trial court's denial of her suppression motion. After advising the defendant of her Boykin[2] rights, the trial court accepted the guilty plea, and sentenced her to two years at hard labor, but suspended the sentence and placed her on inactive probation. The trial judge ordered defendant to pay a fine of $200.00, which also included court costs, payable at $50.00 per month. The defendant was also ordered to reimburse the Indigent Defender Board in the amount of $250.00, also payable in installments of $50.00 per month, to be paid concurrently with the fine and court costs.
At the suppression hearing,[3] Detective Allen Bryant of the Narcotics Division in the St. Charles Parish Sheriffs Office testified that on July 3, 1998, he and a team of officers executed a search warrant at *265 the residence of Donald Wycoff located at 341 Magnolia Ridge in Boutte. The warrant was based on information received from a reliable confidential informant, who, at approximately 2:35 p.m. on that day, informed Detective Bryant that he could purchase illegal narcotics inside the residence. The informant told Detective Bryant that Donald Wycoff, Mildred Brown, and her children fathered by Wycoff, lived at the residence. At approximately 3:00 p.m., the confidential informant entered the residence, and purchased five rocks of crack cocaine for $110.00 from Donald Wycoff. This transaction was monitored by Detective Bryant and another detective with the aid of a listening device.
After the purchase, Detective Bryant applied for a search warrant at Judge Granier's residence, and the search warrant was signed by the judge at approximately 5:30 p.m. As soon as he left the judge's house, Detective Bryant began assembling a team of officers to execute the warrant. Detective Bryant and the team went to the residence and executed the warrant at 10:30 p.m. The search team forcibly entered the home, while simultaneously announcing, "Search warrant. Police." While the team entered the home, Detective Bryant was positioned outside of the residence, watching for people who might attempt to flee the residence. When the team entered, Detective Bryant observed a man jump from the window. The man was ultimately apprehended by other officers a short distance away. Detective Bryant testified that this man was later determined to be Donald Wycoff after four-year-old Donald Brown, one of the children in the residence, asked another officer, "Why did my daddy jump out of the window? Is it because of the drugs on his dresser my momma gives me money to buy things with?"
Detective Bryant testified that after Wycoff was returned to the residence, Wycoff and Mildred Brown were arrested. Detective Bryant presented Wycoff and Brown with the search warrant, and the officers searched the residence. Detective Bryant stated that a white purse containing a large sum of money was discovered under the bed in the master bedroom. Detective Bryant said that Brown claimed that the purse belonged to her and that Brown claimed the money belonged to her and Wycoff. While the suppression hearing does not reflect what items were seized from the residence, the arrest report, prepared by Detective Bryant, reflects that both crack cocaine and marijuana were discovered inside of the residence.
When Bryant was asked why he did not obtain a "nighttime search warrant", though he admitted he realized such was necessary, he also stated that he thought it had been "clear enough" when the warrant was signed that the search would be conducted "that evening."
By her sole assignment of error, the defendant contends that her constitutional rights were violated because the search warrant was executed at night when the warrant did not permit a nighttime search. The defendant contends that her constitutional rights were violated because the search warrant was executed at night when the warrant did not permit a nighttime search: the defendant contends that the trial judge improperly denied her motion to suppress the evidence. The State concedes that the warrant did not contain express authorization for executing the warrant at night. The State contends, however, that the trial court properly denied the motion to suppress because Detective Bryant reasonably believed that a nighttime search was permitted and urges that the good faith exception to the exclusionary rule should apply.
Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United State Constitution and Article 1, Section 5 of the Louisiana Constitution. In the chain of criminal prosecution, the initial protection against unreasonable searches is the requirement *266 that law enforcement officers obtain judicial sanction, via warrant applications, for searches; ultimately, in court, constitutional protections are enforced by application of the exclusionary rule. La. C.Cr.P. art. 703 (suppression of "unconstitutionally obtained" evidence). The exclusionary rule is not an absolute, however. Operating hand in hand with it is the, by now, fairly well established "good faith" exception which allows introduction in court of evidence seized by officers in good faith reliance on warrants which are later determined to be, for one reason or another, legally deficient. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); State v. Varnado, 95-3127 (La.5/31/96), 675 So.2d 268: State v. Singleton, 98-387 (La. App. 5th Cir. 10/28/98), 723 So.2d 484. Falling under the authority of the good faith doctrine are cases where search warrants are ruled deficient because they do not conform to some particular statutory requirement. Our courts have categorized these as mere "statutory" or "procedural" violations, and have held that they do not invoke constitutional scrutiny. Nevertheless, application of the Leon exception still does rely, though perhaps in varying degrees, on a finding of good faith in each case.
State v. Matthieu, 506 So.2d 1209 (La. 1987), for example, involved a search "merely" violative of a procedural rule: the search had been made pursuant to a warrant ultimately ruled "technically contrary" to law because it described a location found outside of the signing judge's territorial authority. Though the court found the search not unconstitutional, admission of the evidence seized does seem also to turn on the finding that the officers had committed an "honest" error of judgment. Matthieu, 506 So.2d at 1213. In State v. Barrilleaux, 620 So.2d 1317 (La. 1993), the warrant violated the "four corners" requirement of La. Code of La. C.Cr.P. art.162 (warrant and supporting affidavit required to show on face facts giving rise to probable cause), and in this case, though the court held the use of oral testimony to supplement the deficient affidavit not of itself unconstitutional, it seems that a finding of good faith was perhaps the controlling factor in upholding the search. Barrilleaux, 620 So.2d at 1321 through 1323 (lengthy discussion of exclusionary rule's preventive, as opposed to curative, role). Finally, in a recent decision discussing just such a violation as occurred in the instant caseviolation of article 163's requirement that warrants "expressly" authorize nighttime searches-though the court found no constitutional violation, they did still give some, though not lengthy, consideration to the facts indicating good faith on the part of the officers in question. State v. Nicholas, 94-1096 (La.App. 1st Cir. 3/3/95), 652 So.2d 666, writ denied, 95-0761 (La.6/23/95), 656 So.2d 1013. In Nicholas, the court held that "... merely because a violation of article 163 occurs (when a search is conducted after dark at 9:30 p.m. without specific authorization for a nighttime search), suppression of the evidence is not required." Nicholas, 652 So.2d at 669 (emphasis added). Nevertheless, in addition to this holding, the court discusses the good faith of the officers in question, though briefly, and finds that the officers probably "... overlooked or were unaware of the requirement of article 163." Nicholas, also at p. 669.
We agree that violations of article 163 do not necessarily amount to constitutional violations, and, for the following reasons, find that there was no such violation in the instant case.
While there is no authority which holds nighttime searches unconstitutional of themselves, evening hours commonsensically imply occasions where searches would be "not reasonable". Louisiana acknowledges the special circumstances surrounding nighttime searches in its requirements that warrants "explicitly" permit law enforcement agencies to execute them. The requirements outlining the recital necessary in warrants requesting night *267 searches are found in La.C.Cr.P. art. 163 and LSA-R.S. 40:985. Article 163 provides the general rule for the executing of search warrants, in pertinent part:
Art. 163. Officer to whom directed: time for execution.
A search or seizure shall not be made during the nighttime or on Sunday, unless the warrant expressly so directs ...
Similarly, LSA-R.S. 40:985 provides for the execution of search warrants concerning controlled dangerous substances as follows:
A search warrant relating to offenses involving controlled dangerous substances may be authorized to be served at any time of the day or night if the judge or magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant.
Under these provisions, a search warrant may be served at night or on a Sunday, if the warrant so authorizes. State v. Johnson, 27,522 (La.App. 2nd Cir. 12/6/95), 665 So.2d 1237, 1249; Nicholas, 652 So.2d at 668. See also State v. Boudreaux, 304 So.2d 343, 346, n. 5 (La.1974).
In the instant case, the trial judge gave the following reasons in denying the motion to suppress:[4]
THE COURT:
The Court makes the following findings in this matter.
First, the police officers gave a reasonable description of the place to be searched in the warrant. That was the residence that was actually searched.
Second, the Court finds that the police officers in this matter in their application for the warrant provided sufficient corroborating information that the information given by this confidential informant was reliable.
The warrant specifically indicated to this Courtthe warrant application indicated to this Court that this particular [officer] had on July 30, 1998 received information from this confidential informant that crack cocaine and approximately 16 pounds of marijuana was located in this residence to be searched. After that, these police officers accompanied this confidential informant to make a controlled buy from persons in this residence and that buy was made, drugs were retrieved, they were determined to be illegal narcotics. Under the totality of the circumstances, the information provided by this confidential informant was reliable.
Third, the police officers in this matter made a no-knock surprise break in to effect this search warrant during the evening. The Court finds that this type of entry into the residence was justified based upon their reasonable belief that had they knocked the occupants at that house would of [sic] had an opportunity to destroy the drugs which were found inside.

*268 Next, I make the finding that this search was conducted during the evening hours.
The Court will not suppress this evidence based upon a technical violation of Article 163 of the Code of Criminal Procedure.
The Court has reviewed the case of State v. Nicholas, 652 So.2d 666, First Circuit, 1995, finds this to be a similar situation factually and concludes that there was not an unconstitutional search in this matter.
The Court also specifically finds that when this warrant was presented to this Court by these police officers, it was presented in the afternoon hourswhat I meant to say was that it's evident from the warrant affidavit that the police officers made the controlled buy at this residence at approximately 3:00 p.m. in the afternoon. When the warrant was presented to the Court, this Court assumed that this warrant would be executed during the nighttime. This Court understands that the trafficking of illegal narcotics is a very fluid activity. And had these officers waited to execute this warrant the following day, it's very possible and very probable that these drugs would not have been in this household.
Based upon this, the motion to suppress is denied.
The search warrant does not expressly authorize a nighttime search. In fact, the plain language of the warrant provides for the search to be conducted during the day as follows:
YOU ARE HEREBY ORDERED to search forthwith the aforesaid RESIDENCE AND CURTILAGE for the property specified, serving this search warrant and making the search during the daytime. (It may become necessary to serve this search warrant during the night time or on Sunday, and affiant will request authorization in the warrant application.)
There is no question, therefor, that the warrant is "facially" defective, that its having been served at night contravened the statute. We limit the scope of the error, however, to this margin. We note initially, and give great significance to, the fact that the flaw apparent on the warrant's face has no bearing on a determination of probable cause. Brown does not suggest, nor does our own review of the record disclose, that there was not sufficient probable cause to support the warrant. Neither does Brown present us with any facts to convince us that the late, but not very late, night search caused her or her family unreasonable harm, alarm or even inconvenience. We also give great weight to the fact that the signing judge did realize that the warrant would be served at night. As clearly as the record shows the defect in the warrant, it shows that the trial judge had been the one who originally signed the warrant. There is no question that when the judge signed the warrant, he realized it would be later the same evening by the time the officers would get to Brown's house. And there is no question that the judge realized why the search could not wait for a more convenient time. The purpose of judicial review of warrant applications, or the process of obtaining "judicial sanction", is to prevent law enforcement agencies from executing unreasonable searches. The contents of the warrant, or its conformity with certain formalities, are not ends in themselves, but simply allow the signing judge to review the reasonableness of the request to search. In the instant case, though the warrant did not conform to the statutory requirements, the signing judge was fully conscious of this one fact that had been omitted from the warrant. And further, even in the absence of the article 163 recitation, the trial judge did hold the warrant request to be reasonable. Brown cannot show that the adherence, or not, to any technical requirements would have had any influence on the signing judge's *269 decision. There was no constitutional violation.
This does not end our inquiry, however, and since we must still address the element of good faith under the Leon exception, we do find that the facts support a finding of good faith, particularly under the less stringent burden applicable where no constitutional violation has occurred. Where no constitutional violation has occurred, a lower standard than even the "objectively reasonable" Leon burden applies, since there is no concern with deterring what is not unreasonable conduct. Matthieu, 506 So.2d at 1213; Nicholas, 652 So.2d at 669. Though Detective Bryant did not claim ignorance of the requirements of article 163, strict adherence to the article would have served no purpose. Because Bryant had both applied for and executed the warrant, he was not in a position of having had to rely on the "four corners" of a warrant to execute a search on facts with which he was unfamiliar. Nor was this a case where the executing officer would have had to presume any knowledge on the signing judge's part, or to presume that the judge had given permission to execute the warrant at night. Bryant had personally spoken with the judge, and thought it had been "clear enough" to the judge that the search would be conducted at night. It had been clear enough. We have this from the judge himself. Further, to explain why the search had commenced hours later after the warrant had been signed, Bryant testified that it had been his intention to serve the warrant as soon as it was safely possible to do so. According to the detective's testimony, he began preparing to execute the warrant immediately after leaving Judge Granier, the signing judge's residence. Detective Bryant said he had to "gather the entry team, fill out the operational plans, get the office ready for debrief, video the residence so the team could look at it, started calling the team, waiting for their response." He stated that the delay in executing the warrant was due simply to the steps necessary to prepare and execute it.
Given Bryant's testimony that he was familiar with article 163, though the above facts may stretch the bounds of good faith, they do not break it. Bryant did undertake the essential safeguardhe made sure that the essential information was conveyed to the signing judge for the judge's determination that the ensuing search would be reasonable. And once the warrant is signed, Bryant should be able to trust that the signing judge did not wish Bryant to write on the warrant facts already known to all parties.
Finally, the record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Godejohn, 425 So.2d 750 (La.1983); State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). Further, where a defendant has entered a plea of guilty, the error patent review should include a determination of whether defendant was properly "Boykinized". State v. Godejohn; State v. Miskel, 95-584 (La.App. 5th Cir. 1/30/96), 668 So.2d 1299, 1304. Additionally, where the defendant has entered a plea of guilty, the issue of whether the trial court complied with La.C.Cr.P. art. 556.1 is now required in an error patent review. La.C.Cr.P. art. 556.1 provides as follows:
A. In any criminal case, the court shall not accept a plea of guilty or nolo contendere, without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ *270 counsel, one will be appointed to represent him.
(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
(4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.
B. In any criminal case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement, and that all constitutional and legal rights are knowingly and intelligently waived.
C. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney and the defendant or his attorney. If a plea agreement has been reached by the parties, the court, on the record, shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered.
D. A verbatim record shall be made of the proceedings at which the defendant enters a plea of guilty or nolo contendere.
E. In any case where a subsequent offense carries an enhanced penalty, the court shall inform the defendant of the penalties for subsequent offenses.
The comments to the article state that it conforms to the Louisiana Supreme Court's Jackson-Boykin three right articulation rule. Consequently, this Court has held that a review of the trial court's compliance with La.C.Cr.P. art. 556.1 encompasses the issue of whether the defendant was properly "Boykinized". State v. Lecoq, 98-286 (La.App. 5th Cir. 8/25/98), 717 So.2d 1249, 1252; State v. Stamp, 98-193 (La.App. 5th Cir. 7/28/98), 718 So.2d 531, 535.
The record reflects that the trial judge did not specifically comply with La. C.Cr.P. art. 556.1 in two respects. First, while the trial judge advised the defendant of her right to trial, the judge did not tell the defendant that she had a right to a jury trial. Second, while the prosecutor read the maximum penalty for possession of cocaine, the record reflects the trial judge did not inform the defendant of these penalty provisions.
At the outset of the proceeding, defense counsel stated on the record that the defendant had completed a plea agreement, which contained the sentence the defendant would receive. Defense counsel also told the court that she had explained the defendant's constitutional rights to her and that the defendant understood those rights. The record also contains the waiver of rights form, which was signed by the defendant, the trial judge, the prosecutor, and the defendant's attorney. Further, the waiver of rights form contains a certification from the defendant's attorney that she had fully explained the form to the defendant. Additionally, defense counsel replied affirmatively when the trial judge asked the defense attorney if she had previously explained the defendant's rights, and asked whether the defense attorney was satisfied that the defendant's plea was freely and voluntarily given.
Additionally, although the trial judge did not inform the defendant of her maximum sentence exposure, the record reflects that the prosecutor read the penalty for possession of cocaine. During the colloquy between the trial judge and the defendant, the trial judge stated as follows:
THE COURT:

*271 Listen carefully to the prosecutor, she is going to tell you what this crime is and the facts of your case and tell me whether or not you agree with what she says; all right?
MS. MCELWEE (assistant district attorney):
Ms. Brown, on July 30th, [sic] 1998, the police executed a search warrant on your house and they came in and found among other things crack cocaine. It's against the law to possess crack cocaine, and you are facing up to five years with or without hard labor and a $5,000 fine or both.
Thereafter, the defendant admitted her guilt, and the trial judge accepted the guilty plea, after finding that the plea was knowingly and voluntarily entered.
In State v. Halsell, 403 So.2d 688 (La. 1981), a case before Article 556.1 was enacted, the Louisiana Supreme Court determined that the defendant was adequately informed of his privilege against self-incrimination, even though the trial judge had not specifically informed defendant of this right during the colloquy. In Halsell, the record reflected that the defendant had been affirmatively informed of his right to a jury trial and of his right to confront his accusers. The record also contained a written waiver of rights form signed by the defendant's attorney stating that the attorney had informed the defendant of his right against self-incrimination and that counsel was satisfied that the defendant knowingly and voluntarily pled guilty. The Halsell court held that the trial judge had a right to rely upon this assertion by defense counsel. Id. at 690-692.
This Court has applied a harmless error analysis in determining the trial court's compliance with La.C.Cr.P. art. 556.1 in State v. Curtis, 98-1283 (La.App. 5th Cir. 6/1/99), 738 So.2d 657, n. 3; State v. Stamp, supra. Additionally, in State v. Mansion, 98-992 (La.App. 5th Cir. 4/27/99), 733 So.2d 1212, this Court held that the defendant was sufficiently informed of his sentence exposure, even though the trial judge had not specifically so informed the defendant. In Mansion, defense counsel stated on the record in the defendant's presence, that he had advised the defendant of his sentence. The record also contained a waiver of rights form which was signed by the trial judge, the defendant, and his attorney. This Court affirmed the guilty plea, reasoning as follows:
[W]e find that defense counsel's statement on the record and in defendant's presence, that he advised defendant that he faced a mandatory life sentence if convicted of the instant charge, was sufficient to inform defendant of his sentencing exposure, and that, pursuant to La.C.Cr.P art. 556.1 and Boykin, supra, the trial court properly accepted defendant's guilty plea as being knowing and voluntary.
Id. at 1214.
The record in the instant case shows that the defendant knew the consequences of her guilty plea, she knew the sentence she would receive, and she was aware of the sentencing exposure for the crime of possession of cocaine. Based on the foregoing, it appears that the trial judge's failure to strictly comply with La.C.Cr.P. art. 556.1 is harmless.
It is noted that the minute entries for December 18, 1998 and March 9, 1999 conflict with the transcripts for those proceedings. The transcript for December 18, 1998 reflects that the trial judge heard and denied the defendant's motion to suppress, while the minute entry for December 18, 1998 is entirely blank. The transcript for March 9, 1999 conflicts with its minute entry in that the transcript reflects that the defendant's fine shall be paid concurrently with the amount of reimbursement to the Indigent Defender Board, but the minute entry does not so reflect. It is well settled that where the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732 *272 (La.1983). We therefor order that the trial judge have these minute entries amended so that they conform with their respective transcripts.
It is further noted that the wrong bill of information is in the record. The bill of information is filed against both the defendant and Donald Wycoff. According to the bill of information, Donald Wycoff's signature appears above the fingerprints on the bill of information, and the Deputy Sheriff also signed the bill, certifying that the fingerprints on the bill are those of Donald Wycoff. We, therefore also order the trial court to supplement the record with the bill of information pertaining to Mildred Brown, not Donald Wycoff.
We finally note the record reflects that the trial judge did not advise the defendant of the period within which to file a post-conviction relief application. La. C.Cr.P. art. 930.8, as amended by 1999 La. Acts 1262, provides that a defendant had two years from the day the judgment becomes final in which to file an application for post-conviction relief.[5]
It is therefore ordered that the district court send written notice of the prescriptive period, as amended, to the defendant within ten days of the rendering of this opinion, then file written proof in the record that defendant received the notice. State v. Stelly, 98-578 (La.App. 5th Cir. 12/16/98), 725 So.2d 562, 564.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
DALEY, J., DISSENTS WITH REASONS.
DALEY, J., dissenting.
I respectfully dissent. Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution. Nighttime searches are permitted by LSA-C.Cr.P. art. 163 and LSA-R.S. 40:985 when the search warrant authorizes such a search. As the majority opinion notes a search warrant may be served at night or on a Sunday, if the warrant so authorizes. State v. Johnson, 27,522 (La.App. 2 Cir. 12/6/95), 665 So.2d 1237; State v. Nicholas, 94-1096 (La.App. 1 Cir.3/3/95), 652 So.2d 666, writ denied, 95-0761 (La.6/23/95), 656 So.2d 1013. See also State v. Boudreaux, 304 So.2d 343, 346, n. 5 (La.1974).
The search warrant in this case does not expressly authorize a nighttime search. It provides for the search to be conducted during the day:
YOU ARE HEREBY ORDERED to search forthwith the aforesaid RESIDENCE AND CURTILAGE for the property specified, serving this search warrant and making the search during the daytime. (It may become necessary to serve this search warrant during the night time or on Sunday, and affiant will request authorization in the warrant application.)
On appeal, the State contends, as it did in the trial court, that the trial judge properly denied the suppression motion, relying on State v. Nicholas, supra. The Nicholas court observed that the warrant was executed in violation of LSA-C.Cr.P. art. 163 and LSA-R.S. 40:985, which require express authorization for executing a search warrant at night. The court found, however, that suppression of the evidence was not required and discussed the good faith exception to the exclusionary rule as follows:
Citing United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the state argues the good faith exception to the exclusionary rule should apply. In Leon, the United States Supreme Court held that the exclusionary rule should not be applied so as to bar *273 the use in the prosecution's case-in-chief of evidence obtained by officers acting in an objectively reasonable good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid under the Fourth Amendment. Not all violations of statutory restrictions are deemed constitutional violations; and the exclusionary rule does not apply to all non-constitutional violations of statutes. [citations omitted]
Id. at 668.
The Nicholas court concluded that the officers acted in good faith because they arrived to execute the warrant before dark.
The defendant argues that the good faith exception should not apply because the officer testified that he knew express authorization was required to execute a warrant at night, and because the officer acknowledged that the warrant did not contain such authorization.
Although the Nicholas court held that the search in that case did not violate the defendant's constitutional rights, the court recognized that nighttime searches may still be unreasonable under the federal and state constitutions. I find Judge Redmann's dissent in the Nicholas opinion to be persuasive. The Legislature has determined that nighttime searches are unreasonable unless specifically authorized by a warrant. Judge Redmann points to Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958), in which the United States Supreme Court stated that "it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home." 357 U.S. at 498, 78 S.Ct. At 1257. Based on the foregoing, I find that under the totality of the circumstances, it was not reasonable for Detective Bryant to believe that he had authority to execute the warrant at night. As Judge Redmann correctly stated:
"A nighttime search without a nighttime warrant is a search not only not authorized by Louisiana law but, to the contrary, expressly forbidden."
State v. Nicholas, at 669.
I would, therefore, reverse the trial court and grant the suppression.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)
[3] The record reflects that both Mildred Brown's and Donald Wycoff's motions to suppress were heard simultaneously on December 18, 1998.
[4] The record reflects that Wycoff and Brown were charged in a single bill of information, and that a third defendant, Leon Petatent, was also charged based on the same set of circumstances. During a recess in the suppression hearing, Petatent entered a guilty plea. The record further reflects that the suppression hearing was conducted on both Wycoff's and Brown's motions to suppress. At the outset of the hearing, the State requested that the trial judge consider testimony from September 17, 1998, a preliminary examination for either Wycoff or Petatent. It also appears that the State requested the trial court to consider testimony from Petatent's suppression hearing, although the record does not clearly identify the prior hearings to which the State referred. The trial judge granted the State's request. No transcripts pertaining to any of the other defendants are in the record. However, the trial judge's reasons in denying the defendant's motion to suppress are based on the evidence presented at the December 18, 1998 suppression hearing, and the reasons do not refer to any testimony from any other hearings. Therefore, it does not appear necessary to request any additional transcripts.
[5] Application of the amended article in the instant case does not violate ex post facto principles, See State v. Robinson, 97-269 (La. App. 5 Cir. 5/27/98), 713 So.2d 828, writ denied, 98-1770 (La.11/6/98), 727 So.2d 444.