798 So.2d 219 (2001)
STATE of Louisiana
v.
Timothy RIVET.
No. 01-KA-353.
Court of Appeal of Louisiana, Fifth Circuit.
September 25, 2001.
*221 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Rebecca J. Becker, Joan S. Benge, Assistant District Attorneys, Gretna, LA, Counsel for State.
Lane Rutherford Trippe, New Orleans, LA, Counsel for appellant-defendant.
Court composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
McMANUS, Judge.
In this matter, Defendant Rivet was convicted of one count of unauthorized entry of an inhabited dwelling and was sentenced to serve two years at hard labor. We affirm the conviction and sentence, but remand the matter for correction of errors in the commitment.

STATEMENT OF THE CASE
On April 20, 2000, the Jefferson Parish District Attorney filed a bill of information charging Defendant, Timothy Rivet, with unauthorized entry of an inhabited dwelling, in violation of LSA-R.S. 14:62.3. The case was assigned number 00-2429 in Division "L" of the Twenty-Fourth Judicial District Court. The district attorney filed a separate bill of information that day, charging Defendant with simple battery and simple criminal damage to property under five hundred dollars. The two misdemeanor charges arose from the same incident which gave rise to the unauthorized entry charge. The misdemeanor charges were assigned case number 00-2430 in Division "L" of the Twenty-Fourth Judicial District Court. Defendant was arraigned on June 27, 2000, and pled not guilty to all charges.
On August 23, 2000, Defendant was tried by a jury of six as to the felony charge. He was simultaneously tried by the judge as to the misdemeanor charges. At the conclusion of trial, the jury returned a verdict of guilty as charged. The judge found Defendant guilty as charged as to the two misdemeanors. The trial court ordered a pre-sentence investigation. On January 10, 2001, Defendant was sentenced to two years at hard labor as to the unauthorized entry conviction. On the same day, the judge sentenced Defendant to six months in Parish Prison on both misdemeanor convictions. The judge ordered *222 that the sentences run concurrently with each other.
On January 11, 2001, Defendant filed motions for appeal in cases 00-2429 and 00-2430. The motions were granted on January 12, 2001. Case number 00-2429 was assigned case number 01-KA-353 in this Court; case number 00-2430 was assigned case number 01-KA-366. On April 30, 2001, this Court issued an Order dismissing appeal number 01-KA-366, as an appeal may not be taken from a misdemeanor conviction. This Court stated:
IT IS ORDERED that this appeal is DISMISSED and REMANDED to the trial court to take appropriate action to notify the defendant, Mr. Rivet, of his entitlement to seek review by writ application to this court and to set a return date accordingly, but no sooner than thirty (30) days from receipt of notice by the defendant.
The trial court issued an Order on May 9, 2001, informing Defendant that the appeal has been dismissed, and that he may seek review of his misdemeanor convictions by writ application. As of this date, Defendant has not applied for writs in this Court. Therefore, this appeal concerns only Defendant's felony conviction for unauthorized entry.

FACTS
On February 10, 2000, Officers Woodrow Mann and Paul Sperandeo of the Westwego Police Department were dispatched to a domestic disturbance at 713 Avenue A in Westwego. When they arrived, they found Defendant, Timothy Rivet, inside the residence. He had a small laceration on his head, and smelled strongly of alcohol. There was evidence of a forced entry. The front door of the house was broken and glass from a shattered window lay scattered on the front porch as well as inside the house.
Sandra Adams, the occupant of the house, was not at the scene when the officers arrived. Officer Sperandeo testified that he interviewed witnesses Sheila Godwin and her mother, Lois Bebout.[1] The women told him they had been inside the house visiting with Sandra Adams when Defendant forced his way into the residence. The witnesses further reported that Defendant physically attacked Sandra. The officers did not have an opportunity to interview Sandra Adams at the scene.
At trial, Ms. Godwin testified that she lived across the street from Sandra Adams. She and her mother were visiting with Sandra when Defendant began pounding on the door. Sandra went to the door and opened it slightly. Defendant, who was intoxicated, pushed his way inside. Defendant had a cut over his eye, as if he had been in a fight. According to Ms. Godwin, Defendant punched the glass in the door and shattered it. Sandra and Defendant argued, and Defendant hit her repeatedly in the face. Defendant, who was wearing steel-toed boots, kicked Sandra in the leg.
Ms. Godwin fled the house. She ran across the street to her own house and telephoned 9-1-1. When she returned to Sandra's house, she saw that Sandra's nose and mouth were bleeding. Ms. Godwin told Sandra she had called the police, and Sandra fled the scene because there were outstanding warrants for her arrest. Ms. Godwin telephoned Betty Adams, Sandra's mother and the owner of the house, to inform her of what had transpired. Betty Adams immediately went to the house and spoke with the investigating officers. She informed them that she *223 wished to pursue criminal charges against Defendant, as he did not have the authority to enter the house. The officers arrested Defendant for unauthorized entry of an inhabited dwelling.
Betty Adams testified that she owns the house at 713 Avenue A, but does not live there. On February 10, 2000, Sandra and Sandra's daughter, Chelsea, were living at the house. Defendant did not have the authority to be in the house on that day. Betty testified that the damage to her house amounted to five hundred dollars. She paid for the repairs herself. Betty further testified that Defendant had broken the door to that house several times before the incident on February 10, 2000.
Sandra Adams testified that Defendant is her boyfriend, and that the two of them have been together for three years. Defendant was living at the Avenue A house with her permission, but without her mother's knowledge. Sandra denied that Defendant beat her or that he broke the door. She said a former boyfriend of hers had previously broken the door. Sandra testified that Defendant paid to have the broken door fixed after he was released from jail.
Defendant testified that he was living with Sandy at 713 Avenue A, but that he continued to receive his mail at his father's house so that Sandra's mother would not discover their living arrangements. He denied having broken into the house. He had Sandra's permission to live there. He stated that many things in the house were in bad condition, and that the door was falling off its hinges prior to February 10, 2000. When he and Sandra moved into the house, it had several broken windows. On that day, he and Sandra argued and she left the house for some time. She did not return when expected, so he became angry and punched a window, breaking it. He helped repair the damage not because he had caused it, but because he wanted to help Sandra. Defendant testified that he has never beaten Sandra.

ASSIGNMENT OF ERROR NUMBER ONE
As his first assignment of error, Defendant argues that the verdict was returned by less than the constitutionally required number of jurors.
By this assignment, Defendant complains that the minute entry for August 23, 2000, the day of trial, shows there were only five jurors and one alternate selected. State law requires that Defendant be tried by a jury of six, all of whom must concur in the verdict. La. Const. art. I, § 17; LSA-C.Cr.P. art. 782A. Defendant argues that the verdict did not meet those legal requisites, and is therefore a nullity.
As Defendant claims, the record contains errors and discrepancies with respect to jury composition. The selected jurors listed in the August 23, 2000, minute entry are Harriet Gaines, Susan Fowler, Barbara Cornay, Thomas Bourgeois and Charles Gendusa. James Richardson is listed as an alternate juror. The transcript of the polling shows that the jurors were Mr. Bourgeois, Mr. Gendusa, Ms. Comay [sic], Ms. Flores, Ms. Fowler, and Ms. Adolph. There are obvious differences between the transcript and the minute entry. Ms. Gaines is included in the minute entry, but not in the polling. Ms. Flores and Ms. Adolph are included in the polling, but not the minute entry.
In response to an order from this Court, the record was supplemented, on May 29, 2001, after Defendant filed his brief with this Court. The supplemental record resolves the noted discrepancies, and confirms that Defendant's jury was properly constituted.
*224 An amended minute entry contained in the supplemental record reflects that the jurors were Amelia Adolph, Susan Fowler, Ruben Flores, Barbara Cornay, Thomas Bourgeois and Charles Gendusa. The alternate is listed as James Richardson. The voir dire transcript also shows that the sworn jurors were Adolph, Fowler, Flores, Cornay, Bourgeois and Gendusa, with Richardson as an alternate.
The voir dire transcript, the amended minute entry, and the polling transcript all reflect that Defendant had a jury of six.[2] Generally, where a transcript and a minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983); State v. Villarreal, 99-827, p. 9 (La.App. 5 Cir. 2/16/00), 759 So.2d 126, 132, writ denied, 00-1175 (La.3/16/01), 786 So.2d 745; State v. Brown, 99-598, p. 16 (La.App. 5 Cir. 12/15/99), 750 So.2d 262, 271.
The error Defendant complains of here is resolved by the contents of the supplemental record. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
As his second assignment of error, Defendant argues that it would be error for a conviction to be upheld where the State has utterly failed to prove one essential elementhere, the element requiring that there was an unauthorized entry.
Defendant here argues that the evidence at trial did not support a conviction for unauthorized entry of an inhabited dwelling, as the State failed to show that he did not have the authority to enter 713 Avenue A on February 10, 2000. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293; State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 608.
Unauthorized entry of an inhabited dwelling is defined by LSA-R.S. 14:62.3A as "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." An unauthorized entry is an entry without consent, express or implied. State v. Ortiz, 96-1609, p. 14 (La.10/21/97), 701 So.2d 922, 931, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Dunn, 263 La. 58, 267 So.2d 193 (1972). In the case of a private residence, a person must have the consent of the occupant or an occupant's agent to constitute a defense to unauthorized entry. This consent must be given by a person with authority or capacity to consent. State v. Ortiz, supra; State v. Lozier, 375 So.2d 1333, 1336 (La. 1979).
In the instant case, there was conflicting testimony as to whether Defendant was given the authority to enter the residence at 713 Avenue A on February 10, 2000. Betty Adams, the owner of the house, testified that she allowed her 41-year-old daughter, Sandra Adams, to live *225 there. Betty stated that Defendant had lived with her daughter in the house for some time without paying rent. Betty believed that Sandra and Defendant had had a falling out, and that Sandra had ordered Defendant to move out of the house. Defendant did not have Betty's permission to be in the house on February 10, 2000. However, as a legitimate occupant of the house, Sandra technically had the authority to consent to Defendant's presence there. Sandra testified that she had "put him out earlier," but that she and Defendant had gotten back together. Both Sandra and Defendant testified that they knew Betty Adams did not want Defendant in the house, and that they lied to her about their living arrangements.
Sheila Godwin, Sandra's neighbor, was visiting Sandra at the time of the incident. Godwin testified that she did not believe Defendant was living with Sandra at that time. While Godwin was at the house, Defendant arrived and began pounding on the front door. Sandra screamed, "What do you want?" Sandra went to the door and opened it slightly. Defendant then pushed his way into the house. Defendant did not use a key to unlock the doorin fact, he testified that he had never possessed one. Defendant slammed the door closed, causing the glass portion of the door to break. Sandy and Defendant argued, and Defendant hit and kicked Sandy. Sandy repeatedly told Defendant to leave.
Joint Exhibit 1, admitted pursuant to a stipulation by the defense and the prosecution, was a copy of a police statement made by Ms. Bebout, Ms. Godwin's mother, on February 10, 2000. According to the written statement, "Timmy" arrived at "Sandy's" house and knocked loudly on the door. "Sandy" asked "where the hell" he had been. Defendant pushed "Sandy" into the house and started hitting her. He punched the glass while they waited for police.
Sandra denied that Godwin was at the house that day. She testified that she willingly allowed defendant into the house when he knocked on the door. She denied that Defendant had beaten her, although she said she had at one time been physically abused by her ex-husband. She stated that she still cares for Defendant and does not want him to go to jail. She further testified that she fled the scene before police arrived because there was an outstanding warrant for her arrest. At the time of trial, Sandra Adams was incarcerated on unrelated charges. She testified that she had telephoned Defendant daily during the time leading up to his trial.
Defendant testified that Sandra willingly let him into the house after he knocked on the door, and that the two were alone in the house. He stated that he and Sandy argued, and she left the house for some time. When she failed to return, he became angry and punched a window, breaking it.
Defendant explained that the house was in bad condition when he and Sandra began living there together. He never damaged the door. It was broken prior to February 10, 2000, and he patched it several times. Three days after the incident, Defendant fixed the window he had broken, as well as the door. He made the repairs so that Sandy would be safe. Betty Adams testified that it was she who paid for repairs on the door, and that Sandy engaged someone to do the repairs.
The testimony of assistant district attorney Paul Schneider contradicted Sandy Adams's claim that Defendant had her authority to be inside the house. Mr. Schneider stated that he interviewed Sandra Adams in the course of screening the instant charges for prosecution. His notes from that interview read, "ex boyfriend *226 knocked on doortold him to go away broke door downcame inkicked me in legssteel toe bootsbruisesI slapped himhe punched me in mouth." Mr. Schneider testified that Sandra did not tell him she had willingly allowed Defendant to enter the house.
The verdict in this case turned on a credibility determination. In finding Defendant guilty of unauthorized entry, the jury showed it rejected the version of events given by Defendant and Sandra Adams, and gave credence to Ms. Godwin's testimony and the evidence produced by Mr. Schneider. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. State v. Armstrong, 99-925, p. 6 (La.App. 5 Cir. 2/16/00), 756 So.2d 533, 536, writ denied, 00-2419 (La.6/1/01), 793 So.2d 182. See also, State v. Bordenave, 95-2328, p. 2 (La.4/26/96), 678 So.2d 19, 20. Considering the evidence in the light most favorable to the prosecution, it appears the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Defendant entered the Adamses' house without authorization.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
As his third assignment of error, Defendant asserts that it was errorspecifically, ineffective assistance demonstrated on the record before the courtfor trial counsel to fail to object or to file a motion for either judgment of acquittal or for new trial, in the face of a deficit of proof as to one element of the charged offense.
Defendant here complains that his trial counsel was ineffective in failing to file a post-trial motion challenging the sufficiency of the evidence. Although claims for ineffective assistance of counsel are generally more appropriately addressed through an application for post conviction relief, the record in this case contains sufficient evidence to decide Defendant's claim.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. To prove a claim of ineffectiveness, the defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Snavely, 99-1223, p. 14 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 959, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840.
The question of sufficiency of the evidence is most properly raised in the trial court by a motion for post verdict judgment of acquittal. LSA-C.Cr.P. art. 821. However, the failure to challenge sufficiency by post-trial motion does not preclude appellate review of sufficiency of the evidence. State v. Washington, 421 So.2d 887, 889 (La.1982); State v. Hensley, 00-1448, p. 2, fn. 1 (La.App. 5 Cir. 2/28/01), 781 So.2d 834, 838.
In this matter, therefore, lack of objection notwithstanding, we have reviewed the instant record for such sufficiency of evidence. Consequently, Defendant cannot show that he was prejudiced by any alleged ineffectiveness, and this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
As his final assignment of error, Defendant asserts that it was error for the court to admit and publish to the jury a document the District Attorney's "blue letter" over defense objection, which was used to corroborate the testimony of some *227 of the witnesses called to impeach Sandy Adams with her prior inconsistent statements.
Defendant challenges the admission in evidence of State's Exhibit 2, the "blue letter" presented by State's witness Paul Schneider, which contained the notes he made during an interview with Sandra Adams.
We are without authority to review this assignment of error, however, as Defendant failed to preserve his right to appellate review by making a timely objection at trial.
Article 841 of the Louisiana Code of Criminal Procedure provides, in pertinent part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." In the instant case, defense counsel did not object when the State produced the "blue letter" and questioned Mr. Schneider regarding the notes he had written on it. In fact, counsel did not make an objection until after Mr. Schneider's testimony was completed, and the State moved the court to admit the letter in evidence. An objection made after the evidence is before the jury comes too late. State v. Bretz, 394 So.2d 245, 251 (La. 1981); State v. Jones, 99-1185, p. 20 (La. App. 5 Cir. 9/22/00), 769 So.2d 708, 719.
We cannot give Defendant relief based on this error; we are without authority to even review it. This assignment is without merit.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The commitment contains conflicting information. It first states that Defendant was found guilty by a jury of unauthorized entry. It then goes on to say that Defendant entered a guilty plea. The latter statement is, of course, incorrect. The transcript shows beyond question that Defendant was tried and convicted by a jury. This Court has consistently held, based on State v. Lynch, 441 So.2d 732 (La.1983), that when the transcript and the minute entry conflict, it is the transcript that prevails. See, State v. Villarreal, 99-827 at p. 9, 759 So.2d at 132; State v. Brown, 99-598 at p. 16, 750 So.2d at 271.
Therefore, to avoid further confusion and any possible prejudice to Defendant, we must remand the matter to allow the minute entry/commitment to be corrected to conform to the transcript.
Therefore, for the above reasons, Defendant's conviction and sentence are affirmed, and the matter is remanded to allow the court below to correct the commitment to show that Defendant's conviction resulted from a trial by jury, not a guilty plea.
AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.
NOTES
[1] Her name is also given as Lucille Bebout in the record.
[2] It is noted that the trial judge mistakenly referred to Ruben Flores as "Miss" Flores during the polling proceeding. Additionally, Ms. Cornay is incorrectly referred to as Ms. Comay in the polling transcript. These appear to be clerical, rather than substantive errors.