756 So.2d 533 (2000)
STATE of Louisiana
v.
Jeffrey E. ARMSTRONG.
No. 99-KA-925.
Court of Appeal of Louisiana, Fifth Circuit.
February 16, 2000.
*534 Paul D. Connick, Jr., District Attorney, Alison WallisAppellate Counsel, Allison MonahanTrial Attorney, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee State of Louisiana.
Bruce G. Whittaker, Louisiana Appellate Project, Gretna, Louisiana, Attorney for Appellant Jeffrey E. Armstrong.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
CANNELLA, Judge.
Defendant, Jeffery E. Armstrong, appeals from his conviction of unauthorized entry of an inhabited dwelling, a violation of La. R.S. 14:62.3, and his enhanced sentence of life imprisonment at hard labor as a third felony offender.[1] We affirm the conviction and sentence.
Defendant and Susan Cuadrado began dating in 1996. In 1998, the two were *535 living together in an apartment in Terrytown where they became friends with Sarah and John Peterson, who also lived in the apartment complex. Cuadrado and Sarah Peterson became close friends. Both women were "retired" motorcycle bikers. Cuadrado visited the Petersons frequently. She often walked into their apartment without knocking on the door when the Petersons were expecting her to visit, or when they saw her through their window and waved her into the house. Defendant also visited the Petersons frequently. Sarah Peterson had washed his clothes on occasion and defendant used their telephone when his was disconnected. However, both Petersons testified that the defendant did not have permission to enter their home without knocking first.
On September 12, 1998, Cuadrado spent the day at the Petersons' apartment playing cards with the Petersons and Helen Washington (Washington), another neighbor. She had a few beers during the day and had been looking for the defendant since noon. At 7:00 p.m., she left the Petersons' apartment and found the defendant in another apartment in the complex. According to Cuadrado, an argument ensued during which defendant threatened to kill her and she ran to the Petersons' apartment to get away from defendant who chased her. Both of the Petersons testified that when Cuadrado entered their apartment, she tried to close the door behind her, but defendant forced his way into the apartment and began hitting her. Sarah Peterson, a former Hell's Angel motorcyclist, separated the defendant and Cuadrado, and shoved the defendant out of the apartment. Washington called 911.
Deputy Serena testified that he was dispatched to the Petersons' apartment at approximately 7:20 p.m. on the evening of September 12, 1998. After interviewing the witnesses, he went to defendant's apartment where he found him standing outside the apartment. The Deputy testified that he verified defendant's identity and then placed defendant under arrest for simple battery and unauthorized entry of an inhabited dwelling.[2]
Defendant testified that the Petersons had an open-door policy with him, as well as with Cuadrado. Defendant claimed that he usually just walked in and that Sarah Peterson had told him he did not have to knock before he entered. Defendant admitted that he and Cuadrado argued that day. However, he denied that he forced his way into the Petersons' apartment. Rather, defendant contended that Cuadrado told him the Petersons wanted to talk to him and that he followed her into their apartment. According to defendant, when he entered the apartment, Cuadrado suddenly jumped on him and then Sarah Peterson shoved him out of the apartment. Defendant denied striking Cuadrado. He said he would not hit a woman, especially a small woman like her.
The defense also presented the testimony of defendant's sister, Tammy Nolan (Nolan), and defendant's former sister-in-law, Marie Boyer (Boyer). Nolan testified that Cuadrado telephoned her several times after 4:00 p.m. on that day, asking her to come to the apartment. When Nolan arrived later that day, she saw her brother in handcuffs and his shirt was torn. Boyer testified that someone from the apartment complex telephoned her about the incident. By the time she arrived, she saw Nolan, but did not see the defendant.
On appeal, defendant asserts first that the evidence was insufficient to support the verdict, and second, that his sentence is excessive.
Defendant first contends that the evidence is insufficient to support his conviction *536 for unauthorized entry of an inhabited dwelling because the State failed to prove his intent to enter the Petersons' home without authorization. He argues that the evidence at trial supported a finding that he reasonably believed he had permission to enter the Petersons' home. The State responds that the guilty verdict indicates that the jury did not believe the defendant's version of events and that this credibility determination should not be disturbed on appeal.
The appropriate standard of review for determining the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). The reviewing court must decide, after viewing the direct and circumstantial evidence in the light most favorable to the prosecution, whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789; State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930; State v. Styles, 96-897 (La.App. 5th Cir. 3/25/97), 692 So.2d 1222, 1232, writ denied 97-1069 (La.10/13/97), 703 So.2d 609. The Jackson standard does not, however, "serve as a vehicle for a reviewing court to second-guess the rational credibility determinations of the fact finder at trial." State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293; State v. Williams, 98-1146 (La.App. 5th Cir. 6/1/99), 738 So.2d 640, 645-46.
La. R.S. 14:62.3(A) states:
Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.
Defendant argues that the evidence showed that he had been at the Petersons' with permission in the past. He states that the evidence shows that he had washed clothes at the Petersons and had used their telephone while his telephone was out of service. Although the Petersons testified that the defendant had been at their home on previous occasions, both of them stated that the defendant did not have permission to enter their home any time he wished. Both of them also stated that the defendant did not have permission to enter their home that night. Mrs. Peterson also stated that unless she saw Cuadrado from the window and waived her inside, even Cuadrado knocked on the Petersons' door before gaining entry. Cuadrado corroborated this testimony. Washington likewise testified that the defendant had been at the Petersons' apartment before, but that he had knocked and waited to be invited inside. Washington further stated that she also knocked on the door before walking into the Petersons' apartment. In addition, all of the State's witnesses testified that the defendant forced his way into the apartment on the day of the incident. Only defendant testified that he merely followed Cuadrado into the Petersons' apartment.
In finding the defendant guilty of unauthorized entry of an inhabited dwelling, the jury made a credibility determination by rejecting the defendant's version of the events. It is not the function of the reviewing court to assess the credibility of witnesses or to re-weigh the evidence. State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20; State v. Holmes, 98-490 (La.App. 5th Cir. 3/10/99), 735 So.2d 687, 691. After our review, we find that considering the evidence in the light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant intentionally entered the Petersons' home without authorization.
Defendant next asserts that his life sentence is constitutionally excessive and the trial judge had the duty under State v. Dorthey, 623 So.2d 1276 (La.1993) to reduce his sentence. The State responds that the trial judge properly sentenced the defendant to the mandatory minimum sentence *537 of life imprisonment because the defendant failed to present evidence in the trial court to rebut the mandatory sentence's presumption of constitutionality.
The Eighth Amendment of the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is generally considered to be excessive if it is grossly disproportionate to the offense or imposes needless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. McCorkle, 97-966 (La.App. 5th Cir. 2/25/98), 708 So.2d 1212, 1218. In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. McCorkle, 708 So.2d at 1218-1219. The trial judge is afforded wide discretion in determining a sentence and the Court of Appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. McCorkle, 708 So.2d at 1219; La.C.Cr.P. art. 881.4(D).
In order to find the punishment mandated by the legislature excessive, the trial judge or reviewing court must find that the sentence makes no measurable contribution to the acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 674. "A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality." State v. Johnson, 709 So.2d at 676. To rebut the presumption, the defendant must show "that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, 709 So.2d at 676, quoting State v. Young, 94-1636 (La. App. 4th Cir. 10/26/95), 663 So.2d 525, 528.
In this case, defendant was found to be a third felony offender because he pled guilty in 1987 to felony theft of goods (of a boat motor),[3] pled guilty in 1995 to distribution of cocaine (3 rocks), and was convicted in 1999 of the underlying offense of unauthorized entry of an inhabited dwelling. Because the predicate felony of distribution of cocaine is a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years, the Habitual Offender Law prescribes a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 15:529.1.A(1)(c)(ii); La. R.S. 40:967(B)(4)(b).[4]
For the following reasons, we affirm the enhanced sentence.
The appellate record reflects that while defense counsel noted an objection to the enhanced sentence, she did not orally move for reconsideration of the enhanced sentence, nor does the appellate record reflect that counsel filed a motion for reconsideration as required by LSA-C.Cr.P. art 881.1. Nevertheless, this Court has reviewed a defendant's constitutional challenge of his sentence even in the absence of a motion to reconsider sentence. State *538 v. Williams, 98-651 (La.App. 5th Cir. 2/10/99), 729 So.2d 14, 22.
In his brief, defendant acknowledges that his sentence is the mandatory minimum sentence, but nevertheless urges that his sentence is constitutionally excessive, relying on State v. Dorthey, supra. In Dorthey, and more recently in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676, the Louisiana Supreme Court recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. However, "a sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality." State v. Johnson, 709 So.2d at 676; State v. Medious, 98-419 (La.App. 5th Cir. 11/25/98), 722 So.2d 1086, 1093, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876. We find that defendant failed to present any evidence at the sentencing hearing that would rebut the presumption of constitutionality.
In the instant case, in his appellate brief, defendant argues that his sentence is constitutionally excessive for two reasons, (1) because his two predicate offenses were non-violent felonies and (2) because the underlying offense, unauthorized entry of an inhabited dwelling, is on the "lower end of the scale" of offenses. The State responds that defendant has not rebutted the presumption of constitutionality.
In order to rebut the presumption of constitutionality, a defendant must show that
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case.
State v. Johnson, at 676 (quoting from State v. Young, 94-1636, pp. 5-6 (La.App. 4th Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223).
At his enhanced sentencing, the defendant did not articulate any reason to support the position he now takes on appeal, that the mandatory life sentence is constitutionally excessive. However, since the trial court's reasons are derived from the record and documents therein, the trial judge was aware of both defendant's circumstances and the allegations of the State that the defendant threatened to kill, chased and committed a battery on Susan Cuadrado. While we acknowledge that defendant now makes some arguments regarding the excessiveness of his sentence, we cannot fault the trial judge for excessive sentence when the defendant offered no evidence to rebut the presumption of constitutionality and, accordingly, we affirm the enhanced sentence.
Accordingly, we hereby affirm the conviction for unauthorized entry of an inhabited dwelling and sentence of life imprisonment at hard labor.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] He was convicted by a 6 person jury of unauthorized entry of an inhabited dwelling on February 24, 1999 and found to be a third felony offender on June 16, 1999.
[2] During defendant's testimony, the day of the incident is referred to as September 10, 1998, while, during the testimony of the State's witnesses, the date is referred to as September 12, 1998. The witnesses agreed that the incident occurred on Saturday, which would have been September 12th.
[3] The defendant received a first offender pardon for his first offense, as provided by La. Const.1974, Art. IV, § 5(E)(1) and La. R.S. 15:572(E). A person who has been granted a pardon may still be found to be an habitual offender under La.R.S. 15:529.1. State v. Adams, 355 So.2d 917, 921-22 (La.1978); State v. Lee, 98-0087 (La.App. 4 Cir. 3/24/99), 735 So.2d 715, 716-17.
[4] When the offense of distribution of cocaine was committed in 1994, the term of imprisonment was the same, but the penalty was provided in 40:967(B)(1).