957 So.2d 203 (2007)
STATE of Louisiana
v.
Desiree A. MORRISON.
No. 07-KA-5.
Court of Appeal of Louisiana, Fifth Circuit.
March 27, 2007.
Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Juliet Clark, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
*204 Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
EDWARD A. DUFRESNE, JR., Chief Judge.
On March 7, 2006, the Jefferson Parish District Attorney filed a bill of information charging defendant, Desiree A. Morrison, with unauthorized entry of an inhabited dwelling leased to Nick Davidson and located at 600 Deerfield Road, Apartment 2806, in violation of LSA-R.S. 14:62.3. On August 22, 2006, a six person jury found defendant guilty as charged.
On September 20, 2006, defendant filed a motion in arrest of judgment and alternatively a motion for new trial which was denied by the trial court. Thereafter, on September 27, 2006, the trial judge sentenced defendant to three years imprisonment at hard labor and also imposed a $500 fine. That same day, the state filed a multiple offender bill of information alleging defendant to be a third felony offender. After being advised of her rights, defendant waived them and stipulated to the allegations contained in the multiple offender bill of information. The trial court then vacated defendant's original sentence and re-sentenced her, as a third felony offender, to six years imprisonment at hard labor without benefit of probation or suspension of sentence. Defendant now appeals.

FACTS
At trial, Deputy Nick Davidson, employed by the Jefferson Parish Sheriff's Office, testified that on October 18, 2005, at approximately 11:20 p.m., he was on patrol; however, things were slow so he was watching an apartment complex from a parking lot on Terry Parkway. He watched this complex regularly and had been there several times since Hurricane Katrina, because one of the apartments was his. Deputy Davidson observed defendant exit a vehicle, go up the stairway and enter Apartment 2806. A male was walking around and got in the car when Deputy Davidson pulled up. When the male was asked what he was doing there, he answered that his mother was there to get something out of her apartment. When defendant walked towards Deputy Davidson, he greeted her and asked what she was doing there. She answered that she was getting some things she left behind during the storm. When Deputy Davidson asked which apartment was hers, she stated the one with the missing roof. After they walked closer she pointed up and said, "That one right there, 2806." She stated she had been living there for a year and a half before the storm. She argued with Deputy Davidson after he told her it was not her apartment, that it was his apartment, and then she claimed she lived in the apartment next door. Deputy Davidson testified that he did not give defendant permission to enter his apartment.
A search of defendant's vehicle revealed items she stated she brought back from Texas; however, Deputy Davidson testified the items were covered in sheetrock dust and dirt.
Deputy Davidson testified his apartment was vacant on October 18, 2005, because it had sustained severe damage from the storm. The entire roof was blown off and his apartment did not have electricity. He recalled writing in his police report that all of the apartments were vacant and were condemned; however, he stated he had no knowledge if the apartments were officially condemned.
Deputy Davidson stated that he went to his apartment just about every day to get things he needed. He asserted that everything *205 he had was in the apartment, including a living room set, a kitchen set, kitchen utensils, microwave, pots and pans, three bedroom sets, a washer and a dryer, a television, food, uniforms, his clothes, and his children's clothes and toys. According to Davidson, although he was not sleeping at the apartment, he still considered it his home and place of abode and had intentions of returning.
Jason Ward, the director of operations for River Oaks Management, who managed Acadian Village, testified that Nick Davidson leased Apartment 2806 with Acadian Village and that he had no knowledge of defendant leasing an apartment in the complex. He stated he did not know if the property was ever condemned, but acknowledged the property was damaged throughout.
Defendant testified that on October 18, 2005, she stopped at the apartment complex at 600 Deerfield Road and took items from the dumpsters. However, she denied entering Apartment 2806. She testified that the officer lied about several things that occurred that night.
On appeal, defendant challenges the sufficiency of the evidence used to convict her of unauthorized entry of an inhabited dwelling. Specifically, defendant argues that the state failed to prove that the apartment was inhabited at the time of the offense. She asserts that, at most, the evidence supported a conviction of criminal trespass.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
Unauthorized entry of an inhabited dwelling is defined by LSA-R.S. 14:62.3(A) as "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." An unauthorized entry is an entry without express or implied consent. In the case of a private residence, consent must be given by one with authority or capacity to consent. State v. Rivet, 01-353 (La.App. 5 Cir. 9/25/01), 798 So.2d 219, 224.
Deputy Davidson testified he did not give defendant permission to enter his apartment; however, defendant is not challenging whether this was an unauthorized entry. The only element of the offense challenged by defendant is whether the apartment was an "inhabited dwelling." In support of this argument, defendant notes the deputy's family was no longer sleeping there and the apartment had no electricity, no roof, and was condemned because of Hurricane Katrina.
It is not necessary that a person be present in the dwelling at the time of the unauthorized entry to satisfy the inhabitation requirement; however, it must be proven that someone was actually "living" in the dwelling at the time. State v. Conn, 420 So.2d 1123, 1124 (La.1982); State v. Tran, 97-640 (La.App. 5 Cir. 3/11/98), 709 So.2d 311, 317; State v. Smith, 28,280 (La. App. 2 Cir. 6/26/96), 677 So.2d 589, 592, writ denied, 97-0850 (La.11/14/97), 703 So.2d 1287.
A house lived in only part of the time may be classified as inhabited. See, State v. Mayeux, 556 So.2d 142 (La.App. 5 Cir.1990), writ denied, 564 So.2d 315 (La. 1990). In State v. Mayeux, the victim *206 rented an apartment, but then reconciled with her husband, making the community home her permanent domicile. When the defendant broke into the apartment, she was occupying the apartment on a part-time basis, using it only occasionally to apply makeup before going to work and sometimes she spent the night. This court decided this was sufficient to meet the requirements of the simple burglary of an inhabited dwelling statute.
In State v. Conn, 420 So.2d at 1124-1125, another case involving simple burglary of an inhabited dwelling, the victim's husband died approximately one month prior to the burglary and at the time of the burglary she was staying with her daughter. Her intentions were to move in with her daughter permanently. The court noted she was still paying rent, her furniture and clothes were still there and she still considered herself domiciled at the apartment. The Conn court found the apartment was inhabited.
In State v. Black, 627 So.2d 741 (La. App. 2 Cir.1993), which also involved simple burglary of an inhabited dwelling, a person was renting the home, but was in the process of moving out. The Second Circuit noted that the record reflected at the time of the unauthorized entry all of the utilities were still connected, some of her belongings were still in the house, she intended to return to the house the day after the incident and she deemed the house to be her place of abode. She testified that she was not spending the night at the home. The Second Circuit noted that not spending the night at the home, alone, was not determinative of whether the home was inhabited. The court further noted that it was not uncommon for people to have two places of abode and for both of the places to be deemed inhabited. Even though she was in the process of moving out, the court determined the inhabitation element had been satisfied.
In the present case, Deputy Davidson admitted he was not living in his apartment on October 18, 2005, because it was severely damaged after the storm. However, he testified that he considered the apartment his home and place of abode. Although he was forced out of his apartment on a full-time basis by Hurricane Katrina's damage, he tried to still maintain control of the apartment as suggested by his testimony that he watched the complex regularly because one of the apartments was his. Further, he went to the apartment almost daily to retrieve things he needed from it. Deputy Davidson testified everything he had was in the apartment, including a living room set, a kitchen set, kitchen utensils, microwave, pots and pans, three bedroom sets, a washer and a dryer, a television, food, uniforms, his clothes, and his children's clothes and toys. Deputy Davidson stated his intentions were to return to the apartment.
The verdict in this case turned on a credibility determination. In finding defendant guilty, the jury obviously rejected the version of events given by defendant and gave credence to Deputy Davidson's testimony. It is not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence. State v. Rivet, 798 So.2d at 226.
Considering the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the apartment was inhabited and that defendant committed an unauthorized entry of that dwelling. Consequently, we find no merit to the sufficiency arguments raised by defendant.
We have also reviewed the record for errors patent, according to LSA-C.Cr. P.art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note that *207 there are several inconsistencies between the transcript and the commitments. Both the multiple bill commitment and the commitment on defendant's original sentence reflect that defendant pled guilty to LSA-R.S. 14:62.3. It is clear, however, that defendant proceeded to a jury trial, and the jury found defendant guilty as charged. Further, the transcript provides defendant stipulated to being a multiple offender and the trial court found she was a third felony offender. The commitment reflects that defendant was advised of her rights and waived them, but does not reflect the actual stipulation to the multiple offender bill of information. Also, defendant's multiple bill sentence was imposed without benefit of probation or suspension of sentence; however, the commitment does not reflect this. Finally, the commitment provides a $500 fine was imposed when defendant was sentenced on the multiple bill. While the transcript from the original sentencing reflects that a $500 fine was imposed, the multiple offender sentencing transcript does not reflect such a fine.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, to avoid confusion and any possible prejudice to defendant, we remand the matter and direct the district court to correct the commitment to accurately reflect the proceedings in this matter.
Therefore, for the reasons set forth herein, defendant's conviction and sentence are affirmed, and the matter is remanded to the district court for correction of the commitments.
CONVICTION AND SENTENCE AFFIRMED; REMANDED TO CORRECT COMMITMENTS.