986 So.2d 768 (2008)
STATE of Louisiana
v.
Kelly RIVIERE.
No. 08-KA-105.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*769 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Assistant District Attorneys, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
The defendant, Kelly Riviere, has appealed her conviction of unauthorized entry into an inhabited dwelling. For the reasons that follow, we affirm.

FACTS:
Monica Martin testified that she was awakened at approximately 2:00 p.m. on July 24, 2006 by the sound of her sliding glass door falling into her residence. She called 911 after seeing that the door had crashed down. Ms. Martin explained that the door was pushed off its track and the track was bent, but the glass was not broken. Ms. Martin testified that while she was on the telephone, the defendant, whom she had known for twenty years, crawled on the floor into her bedroom and stated, "I'll fix it." Ms. Martin stated that she was scared because she did not immediately recognize defendant and that defendant appeared startled to see Ms. Martin in the house. Ms. Martin testified that when she accused defendant of breaking into her house, defendant repeated that she would fix the broken door. Ms. Martin explained that the door was not weak or flimsy, was locked, and had a stick in the frame to reinforce the lock.
Ms. Martin stated that she is disabled, but defendant had never checked on her well-being in the past and had no reason to be especially concerned for her well-being at the time of the unauthorized entry. Ms. Martin testified that defendant did not have permission to enter the residence at that time. She then described a prior incident when defendant was at the residence with permission and questioned Ms. Martin and her son about the contents of her grandson's piggy bank, which contained between $500.00 and $600.00. She explained that her son's car was absent from the residence at the time of the incident and that typically no one was home when the car was absent. Ms. Martin testified that although defendant had previously dropped by the Martin residence unannounced, on defendant's prior visits, defendant had always knocked or rung the doorbell.
*770 Gary Martin, Ms. Martin's son, testified that he did not give defendant permission to enter his residence on July 24, 2006. Upon returning home on that date, he discovered that the back sliding glass door was pushed in, which was not how he left it. Mr. Martin admitted that the wall near the door was damaged by termites, but denied that the damage weakened the door. Mr. Martin explained that at the time of this incident, his car was absent from the residence and this generally meant that his mother and his fiancee were also absent from the residence.
The State introduced three photographs of the broken door, which both victims identified as reflecting the condition of the door when defendant entered the residence. The State then introduced the victims' receipts for repairs to the door and their property tax bill.
At the conclusion of trial, the jury returned a verdict of guilty of unauthorized entry into an inhabited dwelling. Defendant was sentenced to four years imprisonment.[1]

LAW AND DISCUSSION:
The defendant contends the trial court erred in failing to grant the defense's Motion for a New Trial because the evidence is insufficient for a rational jury to find her guilty beyond a reasonable doubt. In particular, she asserts that the State did not establish her criminal intent and that the evidence does not exclude the reasonable hypothesis of innocence that defendant was visiting the Martin residence when the door broke accidentally.
The State contends that sufficient evidence was presented to support the conviction. Specifically, the State points to the testimony of the Martins that the defendant broke into their home without their consent. The State contends the testimony that defendant broke down the door and forced her way into the Martins' home is sufficient to prove the requisite intent. The State concludes that the jury found the testimony of the State's witnesses to be credible and as such a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of unauthorized entry into an inhabited dwelling.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
Unauthorized entry of an inhabited dwelling is defined by LSA-R.S. 14:62.3(A) as the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person. An unauthorized entry is an entry without consent, express or implied. State v. Rivet, 01-353 (La.App. 5 Cir. 9/25/01), 798 So.2d 219. In the case of a private residence, a person must have the consent of the occupant or an occupant's agent to constitute a defense to unauthorized entry. Id. Entry occurs whenever any part of a defendant's person intrudes, even momentarily, into a structure. State v. Kirsch, 04-214 (La.App. 5 Cir. 7/27/04), 880 So.2d 890. Unauthorized entry of an inhabited dwelling requires general intent. State ex rel. D.J., 00-1592 (La.App. 5 Cir. 3/28/01), *771 783 So.2d 558. General criminal intent is present when the circumstances indicate that the offender "in the ordinary course of human experience must have adverted to the prescribed criminal consequences as reasonably certain to result from his act." LSA-R.S. 14:10(2).
The State presented evidence that defendant intentionally entered the residence. In State v. Armstrong, 99-925 (La. App. 5 Cir. 2/16/00), 756 So.2d 533, writ denied, 00-2419 (La.6/1/01), 793 So.2d 182, cert. denied, 534 U.S. 1058, 122 S.Ct. 651, 151 L.Ed.2d 568 (2001), the defendant had entered the victims' residence with permission in the past, but forced his way into the residence on the night in question, according to all of the State's witnesses. This Court found the evidence sufficient to convict the defendant of intentional entry of the home without authorization. Id. Similarly, in State ex rel. D.J., supra, this Court found the evidence sufficient for a delinquency adjudication when the juvenile, who customarily came to the victims' residence to buy freezer pops, forced his way into the residence. In the case at bar, both victims testified that the back sliding glass door of their residence was forced open. Ms. Martin testified that defendant was physically present in the residence immediately after the door was forced open and that defendant claimed responsibility for the broken door. The State presented photographs of the broken door, the victims' repair receipts, and the 911 recording.
The State also presented evidence that defendant had no authorization to enter the residence. Although there was testimony that defendant had permission to enter the residence in the past, as in Armstrong, supra, both victims testified that defendant did not have permission to enter their residence on the day in question. The issue is not whether defendant had permission to enter the residence generally, but whether this particular entry was authorized. State v. Spain, 99-1956 (La.App. 4 Cir. 3/15/00), 757 So.2d 879. The victims also testified that the absence of the family car customarily indicated that no one was home. Ms. Martin testified further that defendant appeared surprised to see someone in the house and that defendant was crawling on the floor. Ms. Martin further explained that during her previous visits the defendant rang the doorbell or knocked rather than entering through the back door unannounced.
The State furthermore presented evidence that defendant entered an inhabited dwelling. It is not necessary that a person be present in the dwelling at the time of the unauthorized entry to satisfy the inhabitation requirement; however, it must be proven that someone was actually "living" in the dwelling at the time. State v. Morrison, 07-5 (La.App. 5 Cir. 3/27/07), 957 So.2d 203, writ denied, 07-0742 (La.11/2/07), 966 So.2d 601. Both victims testified that they inhabit the building that defendant entered without authorization, and the State entered their property tax assessment into evidence. Ms. Martin explained that the door forced open by defendant is within six feet of her own bedroom.
Additionally, the State presented evidence that the defendant had the general criminal intent to enter the evidence without authorization. Ms. Martin testified that defendant had never come by the residence to check on her well-being in the past and there was no reason why defendant should have been concerned about her well-being at the time of the unauthorized entry. On previous occasions when defendant had dropped by the Martin residence unannounced, she knocked or rang the doorbell prior to entering. Both victims testified that the sliding door had *772 been forced open thereby bending the metal tracts.
Defendant also asserts, as her reasonable hypothesis of innocence that the door broke accidentally when she was at the Martin residence to visit. Defendant attempted to develop her theory of the case through the cross-examination of the State's witnesses, and the jury evidently rejected it, finding the State's witnesses credible. Witness credibility is to be determined by the jury, and it is not the role of the appellate court to assess the credibility of the witnesses. State v. Butler, 06-645 (La.App. 5 Cir. 12/27/06), 948 So.2d 296.
Considering the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant intentionally entered the Martin home without authorization.

ERROR PATENT DISCUSSION:
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920.
This review indicates there are inconsistencies between the transcript and the commitment. The commitment indicates that defendant's plea was acceptable to the State. However, defendant did not enter a plea of guilty, but was found guilty following a trial by jury. The commitment also reflects that defendant was advised of her right to trial, her right to confront accusers, and her right against self-incrimination, and that defendant waived these rights. However, review of the transcript reveals that defendant was merely advised of her right to testify and that she waived this right only. Furthermore, whereas the transcript reveals that defendant was found guilty by a jury, the commitment reflects that defendant was found guilty by a judge. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, this matter is remanded to the trial court, which is ordered to correct the commitment in order to reflect the proceedings accurately.

CONCLUSION:
Having found the State presented sufficient evidence to support the defendant's conviction, the defendant's conviction is affirmed. This matter is remanded to the trial court for the limited purpose of correcting the commitment.
AFFIRMED.
NOTES
[1] The State filed a multiple Bill of Information alleging the defendant to be a fourth felony offender. Defendant denied the allegations of the multiple bill. There are no further proceedings regarding the multiple bill in the record.